UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MIGUEL A. MARTINEZ CRUZ,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>RENTGROW, INC.,<br><br>　　　　　Defendant. | Case No.: 3:23-cv-499<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Miguel Angel Martinez Cruz ("Plaintiff" or "Mr. Martinez") by and through his counsel brings the following Complaint against RentGrow, Inc. ("Defendant" or "RentGrow") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report that Defendant published to Plaintiff's potential landlord, which falsely portrayed Plaintiff was previously convicted of multiple driving while intoxicated offenses.

## INTRODUCTION

1.　This is an individual action for damages costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.　Defendant is a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these tenant screening reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3. Defendant falsely reported to Plaintiff's prospective landlord that Plaintiff was convicted of six counts of driving while intoxicated ("DWI"). Defendant's reporting is grossly inaccurate and untrue.

4. In fact, Plaintiff has never been charged with driving while intoxicated.

5. The records reported by Defendant *do not* belong to Plaintiff, rather they belong to an entirely different individual.

6. Plaintiff's prospective landlord denied Plaintiff's housing application after receiving the tenant screening report from Defendant, in which Defendant published the DWI convictions, which do not belong to Plaintiff.

7. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records from Dallas County, Texas prior to publishing the information to Plaintiff's prospective landlord.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

10. Defendant's inaccurate report cost Plaintiff the ability to rent the housing unit that was suitably accommodating of his needs, causing him injury as a result of emotional distress, embarrassment, inconvenience, anxiety, and financial loss.

11. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his

reputation; loss of sleep; loss of capacity for enjoyment of life; financial strain; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## **PARTIES**

13. Plaintiff Miguel Angel Martinez Cruz is a natural person residing in Waterbury, Connecticut, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. Defendant RentGrow, Inc. is a Delaware corporation doing business throughout the United States, including the State of Texas and in this District, and has a principal place of business located at 307 Waverly Oaks Road, Suite 301, Waltham, Massachusetts 02452.

15. Among other things, Defendant sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

23. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the one Defendant prepared in Plaintiff's name.

24. The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

25. In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

26. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28. Defendant disregarded its duties under the FCRA with respect to Plaintiff's tenant screening report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

30. Tenant screening reports are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and

disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

31. Tenant screening companies, like Defendant, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

32. Given that Defendant is in the business of selling tenant screening reports, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

33. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

34. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

35. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

36. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting information belonging to another consumer.

# FACTS

## Plaintiff Applies for a Rental Unit with Harbor Vista Condos

37. In or about March 2022, Plaintiff began searching for housing in Florida. Specifically, Plaintiff was searching for a place that was in a safe neighborhood, large enough, and within his budget.

38. Plaintiff and his wife wished to relocate from Connecticut so that they could have better financial opportunities and get away from the cold weather.

39. In or around March 2022, Plaintiff submitted an application for a unit at Harbor Vista Condos ("Harbor Vista").

## Defendant Published an Inaccurate Tenant Screening Report to Harbor Vista Condos

40. Harbor Vista contracted with Defendant to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to rent the townhome.

41. On March 11, 2022, Defendant sold a tenant screening report about Plaintiff to Harbor Vista, wherein Defendant published information including a compilation of Plaintiff's credit history, criminal history, and civil records history.

42. The tenant screening report is a consumer report regulated by the FCRA.

43. Within that tenant screening report, Defendant published inaccurate information about Plaintiff.

44. Specifically, Defendant's tenant screening report about Plaintiff included six grossly inaccurate and stigmatizing DWI convictions from Dallas County, Texas, which were reported as follows:

- RECORD 1 OF 4
    - RECORD 1 – CHARGE 1
        - Case #: M-1451752
        - File Date: 09/12/2014

- Offense: DWI 2ND
- Offense Degree: MISDEMEANOR CLASS A
- Offense Date: 01/19/2014
- Disposition: AGREED PLEA OF GULITY BEFORE THE COURT.
- Disposition Date: 06/03/2019

- RECORD 2 OF 4
    - RECORD 2 – CHARGE 1
        - Case #: M-0423202
        - File Date: 01/12/2005
        - Offense: DWI
        - Offense Degree: Misdemeanor Class B
        - Offense Date: 11/29/2004
        - Disposition: AGREED PLEA OF GUILTY BEFORE THE COURT
        - Disposition Date: 03/22/2005

- RECORD 3 OF 4
    - RECORD 3 - CHARGE 1
        - Case #: UNKNOWN
        - Offense: DRIVING WHILE INTOXICATED
        - Offense Date: 03/22/2005
        - Disposition: DOC Supervision
        - Disposition Date: 03/22/2005
    - Sentence Date: 03/22/2005

- RECORD 4 OF 4 – RECORD 4
    - RECORD 4 - CHARGE 1
        - Case #: M-0423202
        - Offense: DRIVING WHILE INTOXICATED
        - Offense Degree: MISDEMEANOR CLASS B
        - Offense Date: 11/28/2004
        - Disposition: CONVICTED
        - Disposition Date: 03/22/2005
        - Sentence Date: 03/22/2005
    - RECORD 4 – CHARGE 2
        - Case #: M-0423202
        - Offense: DRIVING WHILE INTOXICATED
        - Offense Degree: MISDEMEANOR CLASS B
        - Offense Date: 11/28/2004
        - Disposition: PROBATION DISCHARGE
        - Disposition Date: 03/22/2005
        - Sentence Date: 03/22/2005
    - RECORD 4 – CHARGE 3
        - Case #: M-1451752

- Offense: DWI 2ND
- Offense Degree: MISDEMEANOR CLASS A
- Offense Date: 01/19/2014
- Disposition: CONVICTED
- Disposition Date: 06/03/2019
- Sentence Date: 06/03/2019

45. The above criminal records published by Defendant about Plaintiff to Harbor Vista ***do not*** belong to Plaintiff.

46. Defendant published inaccurate information about Plaintiff. The above-referenced information should not have been included in any tenant screening report about Plaintiff.

47. Specifically, it is indisputable that prior to furnishing the report about Plaintiff to Harbor Vista, Defendant failed to consult widely available public court records in Dallas County, Texas, which indicate that the aforementioned records do not belong to Plaintiff.

48. A cursory review of the widely available underlying public court records confirms that the records belong to an individual named Miguel Angel Martinez ("Convicted Felon Martinez"). Defendant's unreasonable or non-existent procedures allowed Defendant to publish a report about Plaintiff wherein Defendant mixed the criminal history of Convicted Felon Martinez into that same report.

49. Had Defendant actually consulted or obtained the widely available underlying public court records, it would have seen the obvious discrepancies between Convicted Felon Martinez and Plaintiff.

50. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Martinez include the following:

    (a) Plaintiff's legal name is "Miguel Angel Martinez Cruz," and the criminal records belong to a "Miguel Angel Martinez;"

(b) Plaintiff has never resided in Texas, yet the screening report and underlying public court records indicate that Convicted Felon Martinez resided in Dallas, Texas at the time he committed the offenses; and,

(c) Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the tenant screening report is entirely different than that of Convicted Felon Martinez.

51. The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

52. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal convictions belong to an unrelated individual with a different last name than Plaintiff, a different Social Security Number, and who resides in a different part of the country than Plaintiff.

53. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Harbor Vista Denies Plaintiff's Housing Application**

54. In or around March 2022, Plaintiff was notified by Harbor Vista that his housing application was denied.

55. Upon information and belief, Defendant's reporting of the six DWI convictions contributed to the application denial.

56. Shortly thereafter, Plaintiff obtained a copy of the tenant screening report and was shocked and humiliated upon reviewing and realizing that serious criminal convictions of another, namely Convicted Felon Martinez, were published in the tenant screening report Defendant sold about Plaintiff to Harbor Vista.

57. Plaintiff was very panicked, confused, and concerned about the impact of the records of Convicted Felon Martinez being reported on the tenant screening report – specifically, the impact of the same on his future.

58. Specifically, Defendant matched Plaintiff and Convicted Felon Martinez and published the criminal records of Convicted Felon Martinez onto the tenant screening report about Plaintiff and sold that report to Plaintiff's prospective landlord. This exculpatory public record information was widely available to Defendants prior to publishing Plaintiff's tenant screening report to Harbor Vista, but Defendant failed to perform even a cursory review of such information.

59. Defendant's false report cost Plaintiff a housing opportunity that met his needs, including those attendant to affordability, safety, and proximity to friends.

60. Plaintiff was looking forward to living at Harbor Vista because it was in a safe neighborhood, was spacious, was in a desirable location, close to his family's friends, and was within his budget.

61. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

62. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his

reputation; loss of sleep; loss of capacity for enjoyment of life; financial strain; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

63. Specifically, Plaintiff was denied tenancy with Harbor Vista due to inaccurate information.

64. Plaintiff was embarrassed and humiliated that Defendant reported he was convicted of six counts of driving while intoxicated.

65. Defendant's reporting caused Plaintiff to fear that the inaccurate information would be disseminated should he apply for any other rental properties, resulting in additional denies and more wasted application fees.

66. Accordingly, Plaintiff abandoned his dream of moving to Florida and was forced to renew his lease in Connecticut.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

67. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

68. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

69. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

70. At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

71. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening report it sold about Plaintiff as well as the information it published within the same.

72. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his reputation; loss of sleep; loss of capacity for enjoyment of life; financial strain; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

73. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

74. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 20th day of April 2023.

    **STEIN SAKS, PLLC**
*/s/Yaakov Saks*
Yaakov Saks, Esq.,
Bar No. ct30021
One University Plaza, Suite 620
Hackensack, NJ 07601
T: 201-282-6500 ext 101
F: 201-282-6501
E: ysaks@steinsakslegal.com

*Attorney for Plaintiff*
Miguel A. Martinez Cruz